ANDERSON v. PETERSON *et al.*

**Boundaries**: ESTABLISHING LOST CORNER: EVIDENCE. Where the original monument which marked a corner has been obliterated, and its relocation is attempted by measurements from other corners, the most that can be said of the work, in any case, is that it is approximate. And upon consideration of the evidence in this case (see opinion), the report of the majority of the commission to locate the lost corner is approved, though the measurements on which the minority report is based correspond with the field-notes of the original survey.

*Appeal from Webster District Court.*—HON. D. D. MIRACLE, Judge.

FILED, MAY 17, 1888.

THIS is a proceeding under chapter eight, Laws 1874, to establish a corner and boundary line. The district court appointed a commission, consisting of three surveyors, to make the survey. Two of the commissioners united in a report that the corner should be established at a certain designated point. The other commissioner reported that, in his judgment, the true location of the corner was some distance east of the point designated by the majority. The district court approved the report of the majority, and entered judgment in accordance with their recommendation, and, this being adverse to plaintiff, he appeals.

*Wright & Farrell*, for appellant.

*A. E. Clark*, for appellees.

REED, J.—The corner in question is the quarter-section corner on the south line of section fourteen, in township eighty-seven, range twenty-nine, and the disputed line is that dividing the southwest and southeast

quarters of that section.   The different results reached
by the commissioners arise from a difference of opinion
as to the manner in which the survey should be made.
The southwest corner of section fourteen, being the
common corner of that and sections fifteen, twenty-two
and twenty-three, is also lost, and it is conceded by both
parties that the true location of the lost quarter corner
in question can be determined only by first determining
the location of that corner, and their difference is as to
the manner in which that should be done.   The monu-
ment erected at the southeast corner of section fourteen,
being also the northeast corner of section twenty-three
in the original survey, is plainly discernible ; as are also
the quarter corners between sections twenty-two and
twenty-three, fourteen and fifteen, and fifteen and
twenty-two, on the south line of fourteen.   So that we
have original corners one-half mile south, north and
west, and one mile east, of the section corner, the loca-
tion of which is to be determined.   Each of the surveys
locates the corner equidistant from the quarter corners
north and south of it.  The result reached by the minority
of the commission was arrived at by measuring from the
quarter corner between sections fifteen and twenty-two
to the southeast corner of section fourteen, a distance of
one mile and a half, and subdividing the line.   The
total length of the line, as shown by that measurement,
corresponds with its length as shown by the field-notes
of the original survey.   The distance from the quarter
corner west to the disputed section corner, as shown by
the field-notes, is forty chains seventeen links, and the
length of the south line of section fourteen is eighty
chains twenty-two links, and the minority report locates
the corner forty chains seventeen links east of the
quarter corner west of it, and by it the quarter corner
in dispute is located midway between the point thus
fixed and the southeast corner of the section.   The
majority of the commission ran a right line from the
quarter corner between sections twenty-two and twenty-
three to that between sections fourteen and fifteen, and
their report fixes the point of intersection of that line

with the east and west line, as run by the other survey, as the location of the lost section corner, and it locates the quarter corner in dispute midway on the line between that point and the southeast corner of section fourteen. Perhaps it can be said that neither of the theories contended for leads with absolute certainty to the result desired. Indeed, it may be said that absolute certainty is not attainable in such cases. When the monument which marked a corner has been obliterated, and its relocation is attempted by measurements from other corners, the most that can be said of the work, in any case, is that it is approximately correct. The measurements are made under circumstances different from those attending the original survey, and by different parties. The lines are traced with different instruments, and changes may have occurred in the magnetic meridian. No rule can be laid down as applicable to every case, but the question in each case must be determined from the best evidence attainable in the case. The circumstance of the correspondence of the measurement made by the minority of the commission with the fieldnotes of the original survey strongly supports their theory, but it is by no means conclusive.

It is conceded that the lost section corner is situated in a marsh, and the ground is such that the measurement of the line was very difficult. The correspondence may therefore have been accidental, and, if so, the measurement affords no reliable basis for determining the question ; and, when all the facts of the case are considered, we think the other theory is supported by the better evidence. The northeast quarter of section fourteen has been in cultivation for many years. The owner of the tract was examined as a witness by the commissioners, and the substance of his testimony is embodied in the majority report. He testified that before making his improvements he sought to locate the center of the section, that being the southwest corner of his land. At that time, all of the quarter corners of the section were visible ; and he proceeded by staking the lines from the east to the west quarter corner, and from the north to

Anderson v. Peterson

the south corner, the latter being the one in dispute, and adopted the point of intersection as the center of the section, and made his improvements accordingly. As he did the work without the aid of an instrument, it cannot be said to be absolutely correct; but, as the monuments were all visible, the work, if carefully done, would be approximately so. His west line, as thus established, is now clearly defined, and, when prolonged to the south line of the section, intersects it at the point adopted by the majority as the location of the corner. Another circumstance favorable to that theory, and in conflict with the other, is that a right line from the quarter corner between sections twenty-two and twenty-three cuts the point adopted as the true location of the lost section corner, while, if the point adopted by the minority is taken, there is a perceptible angle in the north and south line at that point. Now, while the line between sections twenty-two and twenty-three and that between fourteen and fifteen are, to some extent, independent of each other, and not necessarily on the same variation, there is no apparent necessity for changing the variation at that corner. The line from it to the section corner east was but twenty-two links too long, while the regulations of the department allow a latitude of not more than one hundred links in the east and west section lines. See Zab. Land Laws, 536. But, if any change was made in the variation at that point, we would naturally expect it to be to the east, as that would have the effect to shorten the line running east from the next section corner north; whereas, if the point found by the minority be adopted, it is to the west, and necessarily has the effect to lengthen that line.

If the case should be regarded here as a law action, the judgment is abundantly sustained; and, if we regard it as triable *de novo* in this court, we reach the same conclusion.

AFFIRMED.